UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BOSTER ACTION SHOTS, LLC, )
 )
    Plaintiff, )
 )
vs. ) Cause No.: 4:12-cv-2196
 )
NINJA STAR, LLC, ) JURY TRIAL DEMANDED
    a Missouri limited liability company, )
 )
JASON LANGLANDS, )
    an individual, )
 )
KATTI LANGLANDS, )
    an individual, )
 )
And DOES 1 through 5, )
 )
    Defendants. )

## COMPLAINT

COMES NOW Plaintiff Boster Action Shots, LLC d/b/a "Photo Kicks" ("Photo Kicks"), by and through its undersigned attorneys, and for its causes of action against Ninja Star, LLC ("Ninja Star"), Jason Langlands ("Mr. Langlands"), and Katti Langlands ("Mrs. Langlands") (collectively "Defendants"), states as follows:

    1.    Plaintiff Photo Kicks is a Missouri limited liability company in good standing that was created September 15, 2003, with a principal place of business in Columbia, Missouri.

    2.    Defendant Ninja Star is a Missouri limited liability company that was created September 17, 2010, with a principal place of business in Union, Missouri.

    3.    Upon information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Ninja Star, Mr. Langlands, and Mrs.

1

Langlands, such that any individuality and seperateness has ceased and Mr. Langlands and Mrs. Langlands are both individually and collectively the alter ego of Ninja Star.

4. Upon information and belief, Mr. Langlands is an individual and a resident of the state of Missouri. Mr. Langlands had been employed with Photo Kicks for periods beginning sometime in 2004 and ending on or around September 2010. Upon information and belief, Mr. Langlands had no professional training or experience in photography and/or graphic design prior to his employment with Photo Kicks.

5. Upon information and belief, Mrs. Langlands is an individual and a resident of the state of Missouri. Mrs. Langlands had been employed with Photo Kicks for periods beginning July 21, 2009 and ending on or around September 2010. Upon information and belief, Mrs. Langlands had no professional training or experience in photography and/or graphic design prior to her employment with Photo Kicks.

6. Upon information and belief, since at or before September 2010, Mr. and Mrs. Langlands have been providing photography, graphic design, and related products and services on behalf of Ninja Star to former clients of Photo Kicks who were clients of Photo Kicks during the employment of Mr. and Mrs. Langlands with Photo Kicks, using proprietary materials, trade secrets, and/or confidential information belonging to Photo Kicks.

7. This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338.

8. This Court has supplemental jurisdiction over the remaining claims not addressed in the above paragraph under 28 U.S.C. §1367(a).

9.     Venue is proper in this District under 28 U.S.C. §§ 1400(a) and 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

10.    This Court has personal jurisdiction over each Defendant by virtue of their residence and/or domicile within the State of Missouri

**Facts Common to all Counts**

11.    Photo Kicks is, and at all relevant times herein has been an award winning and nationally recognized photography and graphic design company that specializes in rendering products and services to those engaged in martial arts practice and instruction.

12.     Photo Kicks is, and at all relevant times herein has been the owner of a particular set of photographs referred to internally as the Krav Maga Photoset ("Photoset"), which Photo Kicks has registered with the U.S. Copyright Office in a single application, Registration No. VA 1-835-562.

13.    Photo Kicks markets and renders, and all relevant times herein has marketed and rendered  its products and services nationwide via multiple road crews, composed of one or more staff members that travel to clients in nearly every U.S. state. The road crew members are in a position to, are responsible for, and actually do generate significant customer good will on behalf of Photo Kicks.

14.    Sometime in 2004, Photo Kicks employed Mr. Langlands as a sales person and road crew member. Upon information and belief, Mr. Langlands was assigned to a sales territory comprised of multiple U.S. States, including *inter alia* Florida, New Jersey, Virginia, and Missouri.

15. On or around July 21, 2009, Photo kicks employed Mrs. Langlands as a sales person and road crew member. Upon information and belief, Mrs. Langlands was assigned to a sales territory comprised of multiple U.S. States, including *inter alia* Florida, New Jersey, Virginia, and Missouri.

16. Ancillary to the employment of Mr. and Mrs. Langlands with Photo Kicks, Mr. and Mrs. Langlands each agreed to and signed a non-compete and confidentiality agreement (hereinafter "Agreement"). A copy of the Agreement signed by Mrs. Langlands is attached hereto as **Exhibit 1**. Upon information and belief, Mr. Langlands signed the same Agreement at or around the time he commenced his employment with Photo Kicks, and is in possession of the only copy thereof available.

17. Pursuant to their respective Agreements with Photo Kicks, Mr. and Mrs. Langlands each agreed to maintain the confidentiality of certain information and materials as follows:

> "That during the course of my employment with Adam Boster and Boster Action Shots LLC there has already been and may continue to be disclosed to me certain of [Photo Kicks'] trade secrets consisting of but not limited to: technical information including methods, processes, formulae, compositions, systems, techniques, inventions, machines, computer programs and research projects, and business information including customer lists, pricing data, sources of supply, financial data and marketing, production, or merchandising systems or plans.
>
> "I agree that I shall not during, or at any time after the termination of my employment with the [Photo Kicks], disclose or divulge to others including future employers, any trade secrets, confidential information, or any other proprietary data of [Photo Kicks] in violation of this agreement.
>
> "That upon termination of my employment from [Photo Kicks]:
>
> "I shall return to [Photo Kicks] all documents and property of [Photo Kicks], including but not necessarily limited to: photographs, photocopies, order forms, compact disks, samples, drawings, blueprints, reports, manuals, correspondence, customer lists, computer programs, and all other materials and all copies thereof

relating in any way to [Photo Kicks'] business, or in any way obtained by me during the course of my employment.

"I further agree that I shall not retain copies, notes or abstracts of the foregoing."

18. Pursuant to their respective Agreements with Photo Kicks, Mr. and Mrs. Langlands each agreed "not to directly or indirectly compete with the business of Adam Boster and Boster Action Shots LLC (Company) and it's [sic] successors and assigns during the period of project by project work and for a period of ten years following termination of project by project work and notwithstanding the cause or reason for termination."

19. Pursuant to their respective Agreements with Photo Kicks, Mr. and Mrs. Langlands each agreed that they "shall not own, manage, operate, consult or to [sic] be employed in a business substantially similar to, or competitive with, the present business of Company or such other business activity in which Company may substantially engage during the term of [their] employment."

20. During their employment with Photo Kicks, Mr. and Mrs. Langlands were exposed to a variety of information, materials, and techniques that were essential to and instructive in rendering the products and services of Photo Kicks, including but not limited to sales scripts, training manuals, and pricing strategies (hereinafter collectively "Business Materials").

21. At all relevant times, Photo Kicks derived and continues to derive an independent economic value from the Business Materials in that they were not generally known or readily ascertainable by proper means by its competitors, and Photo Kicks took and continues to take reasonable efforts to maintain the secrecy of the Business Materials.

22. During their employment with Photo Kicks, Mr. and Mrs. Langlands each had access to information and documents, including but not limited to, lists of clients, data pertaining to their personalized photographic and graphic design needs, personalized contact information identifying each client, and customer good will that was obtained by or on behalf of and belonging to Photo Kicks (hereinafter collectively "Client Information").

23. At all relevant times, Photo Kicks derived and continues to derive an independent economic value from the Client Information in that it is not generally known or readily ascertainable by proper means by its competitors, and Photo Kicks took and continues to take reasonable efforts to maintain the secrecy of the Client Information.

24. Prior to the termination of their employment from Photo Kicks, and upon information and belief, Mr. and Mrs. Langlands accepted money from clients of Photo Kicks for services and products rendered on behalf of Photo Kicks and retained the same for themselves without disclosing the income to their employer, with knowledge that the same belonged to their employer.

25. Prior to the termination of their employment from Photo Kicks, and upon information and belief, Mr. and Mrs. Langlands stole money, equipment, and other assets belonging to Photo Kicks and retained the same for themselves and for use in the operation of Ninja Star, with knowledge that the same belonged to their employer.

26. Prior to the termination of their employment from Photo Kicks, Mr. and Mrs. Langlands conspired to form Ninja Star, a competing photography and graphic design company specializing in martial arts photography and operate the same using Business Materials, Client Information, and other assets belonging to Photo Kicks.

27. Subsequent to the termination of their employment, Defendants have used and continue to use Client Information to engage with clients of Photo Kicks and attempt to their solicit business.

28. Upon information and belief, Defendants have leveraged and continue to leverage Client Information, Business Materials, and other trade secrets belonging to Photo Kicks to divert Photo Kicks' customers to Ninja Star and to otherwise directly compete with Photo Kicks.

29. Upon information and belief, Defendants' contacts with Photo Kicks' customers, and the use of Client Information by Defendants during such contacts, have caused the customers' confusion as to whether Defendants are acting on behalf of Photo Kicks or Ninja Star.

30. Photo Kicks has sustained and continues to sustain actual damages as a direct result of Defendants' aforementioned activities in a presently undetermined amount.

31. Photo Kicks has been and will be irreparably injured by the continuation of Defendants' aforementioned activities.

## Count I – Copyright Infringement

32. Photo Kicks reincorporates and realleges the foregoing paragraphs of this Complaint as if set forth fully herein.

33. Under Section 106 of the Copyright Act, 17 U.S.C. § 106, the owner of a copyright has the exclusive right to *inter alia* reproduce, distribute, publicly display, and create derivative works based on the copyrighted work or authorize the reproduction, distribution, public display, and creation of derivative works based on the copyrighted work.

34. The Photoset is, and at all relevant times has been an original work of authorship fixed in a tangible medium under 17 U.S.C. § 101(a)(5).

35. Upon information and belief, Defendants have used one or more photographs in the Photoset in email communications and other marketing materials directed to third parties to solicit business for Ninja Star, thereby reproducing, distributing, publicly displaying, and creating derivative works based upon photographs in the Photoset without the authorization or consent of Photo Kicks.

36. Defendants' acts of infringement have been willful, intentional, and purposeful, and have otherwise been in disregard of and indifferent to the rights of Photo Kicks.

37. Upon information and belief, Defendants have generated and continue to generate profits, revenue, and other benefits that are directly attributable to Defendants' infringement of Photo Kicks exclusive rights under copyright.

38. As a direct and proximate result of Defendants' infringement of Photo Kicks' exclusive rights under copyright, Photo Kicks is entitled to its actual damages plus Defendants' profits from infringement, as will be proven at trial pursuant to 17 U.S.C. § 504(b).

39. As a direct and proximate result of Defendants' willful copyright infringement, Photo Kicks has suffered and will continue to suffer substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Photo Kicks' copyright in the Photoset. Pursuant to 17 U.S.C. § 502, Photo Kicks is entitled to a permanent injunction requiring Defendants to employ reasonable methodologies to prevent or limit infringement of Photo Kicks' copyrights.

## Count II – Breach of Contract

40. Photo Kicks reincorporates and realleges the foregoing paragraphs of this Complaint as if set forth fully herein.

41. In Mr. and Mrs. Langlands' capacity as road crew members and employees of Photo Kicks, each had substantial contact with Photo Kicks' clients.

42. In Mr. and Mrs. Langlands' capacity as road crew members and employees of Photo Kicks, each had access to numerous trade secrets and other confidential information of Photo Kicks and its clients (collectively hereinafter "Confidential Information"), including, but not limited to, the Business Materials and Client Information.

43. The formation of Ninja Star and the use of trade secrets and confidential information of Photo Kicks and its clients, including Confidential Information to operate and manage the same, constitute material breaches of the Agreements.

44. The Confidential Information constitutes trade secrets under the Missouri Uniform Trade Secrets Act, and is accorded the full protection therein granted.

45. The restrictions contained in the Agreements are reasonably necessary for the protection of Photo Kicks, and are reasonably limited in scope and time.

46. Photo Kicks has sustained actual damages as a direct result of the breaches by Mr. and Mrs. Langlands of the Agreements in a presently undetermined amount, and is entitled to the same from Defendants.

47. Because Photo Kicks will be irreparably injured by further breaches of the Agreement, immediate temporary restraints and injunctive relief are warranted.

**Count III - Misappropriation under the Missouri Uniform Trade Secrets Act**

48. Photo Kicks reincorporates and realleges the foregoing paragraphs of this Complaint as if set forth fully herein.

49. As more fully detailed in paragraphs 20 through 23 above, the Confidential Information constitutes trade secrets under the Missouri Uniform Trade Secrets Act, and is accorded the full protection therein granted.

50. Defendants acquired, disclosed, and used, and continue to disclose and use, Confidential Information belonging to Photo Kicks to develop, operate, manage their photography and graphic design business without the consent of Photo Kicks.

51. By virtue of each of their Agreements with Photo Kicks, as well as circumstances surrounding the termination of their employment from Photo Kicks, Defendants Mr. and Mrs. Langlands had a duty to maintain the secrecy of the Confidential Information both during their employment at Photo Kicks and thereafter.

52. At all relevant times, Defendants acts were outrageous because of their evil motive and/or reckless indifference to the rights of Photo Kicks.

53. Upon information and belief, Defendants have unjustly generated profits, revenues, and other benefits as a direct result of their misappropriation of Confidential Information belonging to Photo Kicks, and continue to do so.

54. Photo Kicks has sustained actual damages as a direct result of the misappropriation of Confidential Information by Defendants in a presently undetermined amount, and is entitled to the same from Defendants.

55. Because Photo Kicks will be irreparably injured by further disclosure and use of Confidential Information belonging to Photo Kicks, immediate temporary restraints and injunctive relief are warranted.

**Count IV – Conversion**

56. Photo Kicks reincorporates and realleges the foregoing paragraphs of this Complaint as if set forth fully herein.

57. The theft and retention of money, equipment, and other assets belonging to Photo Kicks by Defendants constitutes an intentional exercise of dominion or control over these assets which seriously interferes with the rights of Photo Kicks to control the same.

58. Defendants retention and use of these assets for the operation and management of their photography and graphic design business indicate a claim of right in opposition to the rights of Photo Kicks

59. Photo Kicks has made demands on Defendants for the return of these assets, which have been refused by Defendants.

60. As a direct and proximate result of Defendants' conversion of these assets belonging to Photo Kicks, Photo Kicks suffered and will continue to suffer pecuniary loss and monetary damages in a presently undetermined amount, and Photo Kicks is entitled to the same from Defendants.

## Count V – Unjust Enrichment

61. Photo Kicks reincorporates and realleges the foregoing paragraphs of this Complaint as if set forth fully herein.

62. As a direct result of Defendants' formation, development, operation, and management of their business in breach of the Agreements with Photo Kicks, Defendants have generated and continue to generate revenue, profits, and other benefits.

63. As a direct result of Defendants' misappropriation, disclosure, and use of Confidential Information, and other proprietary information belonging to Photo Kicks, Defendants have generated and continue to generate revenue, profits, and other benefits.

64. As a direct result of Defendants' theft and retention of assets belonging to Photo Kicks, and the use of the same in the formation, development, operation, and management of their business, Defendants have generated and continue to generate revenue, profits, and other benefits.

65. The Defendants, having generated and continuing to generate revenues, profits, and other benefits as a direct result of the foregoing misdeeds, have been enriched at the expense of Photo Kicks in a presently undetermined amount.

66. Defendants' retention of such revenues, profits, and other benefits is unjust and unfair, inequitable, and unconscionable.

WHEREFORE, Plaintiff Photo Kicks prays for a judgment against Defendants for its actual damages, in an amount to be proven at trial, all profits, compensation, remunerations, and benefits which Defendants Mr. and Mrs. Langlands have generated on behalf of Ninja Star, for punitive damages, for pre-judgment interest at the rate of 9% from the date of demand, for costs expended herein and, for such other and further relief as this Court seems just and proper.

Photo Kicks further prays that this Court enter a Temporary Restraining Order and Preliminary and Permanent Injunctions against Defendants in the form of an Order to restrain and enjoin Defendants for a two (2) year period from the date of this Court's Order, from using and/or disclosing trade secrets belonging to Photo Kicks, from providing photography and graphic design products and services to customers of Photo Kicks, and from otherwise violating the post employment terms of the Agreements.

Photo Kicks further prays for this Court to enter an Order granting Photo Kicks an accounting compelling Defendants to account for all profits, compensation, remunerations, and/or benefits obtained as a result of engaging in the aforementioned conduct.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully submitted,

KAYIRA, LLP

Dated: November 26, 2012

By: _____
Eric Kayira, 50762MO
Brian O'Connor, 61905MO
10 South Lyle Ave.
Clayton, Missouri 63105
Telephone: 314-727-3100
Fax: 314-727-3101
eric.kayira@kayiralaw.com
brian.oconnor@kayiralaw.com
*Attorneys for Plaintiff*

13

Exhibit 1

## NON-COMPETE AGREEMENT

For good and valuable consideration the receipt of which is hereby acknowledged, _Katti Herman_ (Employee), the undersigned hereby agrees not to directly or indirectly compete with the business of <u>Adam Boster and Boster Action Shots LLC</u> (Company) and it's successors and assigns during the period of project by project work and for a period of ten years following termination of project by project work and notwithstanding the cause or reason for termination.

Company defines it's products/services as photography (with and without custom graphics and photo printing), website design, website maintenance, and hosting services.

I, _Katti Herman_ shall not own, manage, operate, consult or to be employed in a business substantially similar to, or competitive with, the present business of Company or such other business activity in which Company may substantially engage during the term of my employment.

I, _Katti Herman_ acknowledge that Company may, in reliance of this agreement, provide myself access to trade secrets, customers and other confidential data and good will.

I, _Katti Herman_ agree to retain said information as confidential and not to use said information on my own behalf or disclose same to any third party.

This non-compete agreement shall extend throughout the United States of America and shall be in full force and effect for ten years, commencing with the date of termination of my project by project work.

This agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns, and personal representatives.

_____
Adam Boster, Owner (Company)    Date

_Katti Herman_                  7/21/09
(Employee)                      Date

## NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged by <u>Adam Boster and Boster Action Shots LLC</u> (Company), the undersigned <u>Patti Herma</u> (Employee) hereby agrees and acknowledges:

That during the course of my employment with Adam Boster and Boster Action Shots LLC there has already been and may continue to be disclosed to me certain of Company's trade secrets consisting but not limited to: technical information including methods, processes, formulae, compositions, systems, techniques, inventions, machines, computer programs and research projects, and business information including customer lists, pricing data, sources of supply, financial data and marketing, production, or merchandising systems or plans.

I agree that I shall not during, or at any time after the termination of my employment with the Company, disclose or divulge to others including future employers, any trade secrets, confidential information, or any other proprietary data of the Company in violation of this agreement.

That upon the termination of my employment from the Company:

I shall return to the Company all documents and property of the Company, including but not necessarily limited to: photographs, photocopies, order forms, compact disks, samples, drawings, blueprints, reports, manuals, correspondence, customer lists, computer programs, and all other materials and all copies thereof relating in any way to the Company's business, or in any way obtained by me during the course of my employment.

I further agree that I shall not retain copies, notes or abstracts of the foregoing.

The Company may notify any future or prospective employer or third party of the existence of this agreement, and shall be entitled to full injunctive relief, and any other legal remedies available for any breach.

This agreement shall be binding upon me and my personal representatives and successors in interest, and shall inure to the benefit of the Company, its successors and assigns.

_____      _____
Adam Boster, Owner (Company)              Date

_____      7/21/09
(Employee)                                Date

